**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**AIKEN DIVISION**

| | |
|---|---|
| Darryl Keith Louis, Jr., Plaintiff, v. Joel Anderson, Defendant. | Civil Action No. 1:25-2958-BHH-SVH<br>**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND TEMPORARY RESTRAINING ORDER** |

The Plaintiff Darryl Keith Louis, Jr. has filed a Motion for Preliminary Injunction and Temporary Restraining Order. (ECF #25). In particular, the Plaintiff asks this Court to issue a mandatory preliminary injunction enjoying any policy that prohibits the Plaintiff from wearing a kufi on transport rides in accordance with his religious beliefs. The Plaintiff alleges that any prohibition related to the wearing of a kufi on transport rides outside of the institution violates his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq*. The Defendant Anderson opposes this motion for the reasons addressed below.

## APPLICABLE STANDARD FOR PRELIMINARY INJUNCTION

The United States Supreme Court has cautioned that "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. The Fourth Circuit agrees that "preliminary injunctions are extraordinary

remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy, Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001).

According to the Supreme Court, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. The Fourth Circuit has explained that the *Winter* standard "requires that the plaintiff make a clear showing that it will likely succeed on the merits at trial." *Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010). The Fourth Circuit recognized that "[t]he *Winter* requirement that the plaintiff clearly demonstrate that it will *likely succeed* on the merits is far stricter than the *Blackwelder* requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." 575 F.3d at 346-47. (Emphasis in original). Under the *Winter* standard, the burden is on the Plaintiff to prove each of the four requirements.

The Fourth Circuit agrees that "preliminary injunctions are extraordinary interlocutory remedies that are granted in limited circumstances and then only sparingly." *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 526 (4th Cir. 2003). Typically, the purpose of a preliminary injunction is "to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." 333 F.3d at 525. However, in this case, the Plaintiff is actually not asking this Court to maintain the status quo. Instead, the Plaintiff is seeking what the Fourth Circuit has recently called "a particularly aggressive form of preliminary injunction, one that is disfavored in any circumstance." *Pierce v. North Carolina State Board of Elections*, 97 F.4th 194, 209 (4th Cir. 2024). As in *Pierce*, the Plaintiff is seeking to alter the status quo by seeking a "mandatory

preliminary injunction," which is "warranted only in the most extraordinary circumstances." *Id. See also*, *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) ("Mandatory preliminary injunctions do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief").

Additionally, this litigation and, more importantly, the remedy, if any, that can be fashioned by this Court are governed by the Prison Litigation Reform Act ("PLRA"). Because this is an action for injunctive relief only, and not money damages, the PLRA plays a critical role. The PLRA's limitations on any award of prospective relief in this litigation are set forth in 18 U.S.C. § 3626(a)(1)(A), which states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that ***such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal righ****t*. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A). (Emphasis added). Accordingly, any injunctive relief awarded will need to be (1) narrowly drawn, (2) extend no further than necessary to correct the violation of the federal right, and (3) be the least intrusive means necessary to correct the violation of the federal right." *Id*.

## LEGAL ANALYSIS

On April 1, 2025, the Plaintiff was transferred from Ridgeland Correctional Institution to Wateree Correctional Institution. He was already housed at Wateree when he filed this lawsuit on April 7, 2025. However, in his Amended Complaint, the Plaintiff alleges that his "claim arose on 1/22/25, while at Ridgeland Correctional Institution." (ECF #17, p. 5). The Plaintiff

references a grievance that he submitted at Ridgeland on January 23, 2025, to which the Warden at Ridgeland, Lavern Cohen, responded with the explanation that SCDC Policy PS-10.05 provides that "Muslim inmates may wear a white kufi head covering throughout the facility, indoors and outdoors. It has not been approved for inmates to wear a kufi outside the institution." (ECF #1-1, p. 4).

In response to that grievance, the Plaintiff filed the current lawsuit. However, the Plaintiff has not demonstrated that he has exhausted his administrative remedies. As indicated, the wearing of a kufi by Muslim inmates is addressed in Section 15 of the "Al-Islam (Muslim) section of Handbook which is part of SCDC Policy PS-12.05 titled "Inmate Religion." Section 15 states, in pertinent part, as follows: "Muslim inmates may wear a white kufi head covering throughout the facility, indoors and outdoors." Section 15 does not, however, explicitly address whether a kufi may be worn outside of an institution such as during transport. However, where new issues arise, SCDC Policy PS-12.05 provides for a procedure for an inmate to request revisions to the religious practices as addressed in the Handbook. Section 4.7 states:

> Recognized faith groups that request a revision of either the beliefs and/or practices as listed in the Handbook will submit the proposed change/request to the Chaplain at his/her institution with a complete description of the requested revision and supporting information from official written documents. The request will be reviewed by the Chaplain and forwarded to the Chief, Pastoral Care Services along with the recommendation of the institutional Chaplain. The request will be considered at the time of the policy's annual review.

As a prerequisite for seeking the injunctive relief sought in this litigation, the Plaintiff must initially demonstrate that he has fully complied with SCDC policy that governs that process. The Plaintiff, however, has not pled nor presented proof that he has complied with that process. In other words, there is no evidence that the Plaintiff has made a request for an amendment to Section 15 of the "Al-Islam (Muslim) section of Handbook by way of full compliance with the

requirements of Paragraph 4.7. As a result, the Plaintiff's request for both preliminary injunctive relief and permanent injunctive relief as sought in this litigation is not ripe for adjudication, and hence, the Plaintiff has not demonstrated a justiciable claim.

While the Plaintiff has submitted a Step 1 and Step 2 grievance with his original Complaint, that is not sufficient to demonstrate exhaustion of his administrative remedies and, in particular, full compliance with the process set forth in Paragraph 4.7. The grievances may show PLRA exhaustion but not necessarily that the claim for relief is ripe. In fact, it is important to note that Warden Cohen correctly advised the Plaintiff that "[i]t has not been approved for inmates to wear a kufi outside the institution." (ECF #1-1, p. 4). The Plaintiff, however, has not shown that he has taken the appropriate steps, as allowed by policy, to seek a change in the kufi policy to extend the practice of wearing a kufi, which is permitted within the institutions, to also be allowed outside of the institutions while on transport rides.

In addition to the Plaintiff's claims not being ripe given his failure to demonstrate compliance with Paragraph 4.7, the Plaintiff's own allegations do not demonstrate that he has been denied the opportunity to wear a kufi while on transport rides and certainly not at his current institution, that being Wateree Correctional Institution. Thus, in addition to his claim for preliminary and permanent injunctive relief not being ripe, the claim also appears to be moot.

Notably, the Plaintiff has not identified a single occasion where he attempted to wear a kufi during transport and was denied or even disciplined. More specifically, the Plaintiff has not demonstrated that he has been denied the opportunity to wear a kufi on transport rides while at his current institution. He has raised the issue, according to his pleadings and the evidence presented, only at Ridgeland Correctional Institution. However, given the Plaintiff's transfer to Wateree, his injunctive relief claim pertaining to the wearing of a kufi outside of an institution appears to currently be moot.

In *Williams v. Ozmint*, 716 F.3d 801 (4th Cir. 2013), the Fourth Circuit explained that "[m]ootness principles derive from the requirement in Article III of the Constitution that federal courts may adjudicate only disputes involving 'a case or controversy.'" 716 F.3d at 808. The Fourth Circuit reasoned as follows:

> The case-or-controversy requirement applies to all stages of a federal case. It is not enough that a dispute was very much alive when the suit was filed, but the parties must continue to have a "particularized, concrete stake" in the outcome of the case through all stages of litigation. This constitutional requirement is of paramount importance, because the federal courts have no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

716 F.3d at 808-809. (Citations omitted). As the Fourth Circuit further explained, "[a] case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." 716 F.3d at 809.

In the context of prisoner litigation, the Fourth Circuit has consistently ruled that claims for injunctive relief are deemed moot upon the transfer or release of an inmate. In the leading case of *Incumaa v. Ozmint*, 507 F.3d 281 (4th Cir. 2007), *cert. denied*, 128 S.Ct. 2056 (2008), the Fourth Circuit explained that "[m]ootness questions often arise in cases involving inmate challenges to prison policies or conditions, and courts, including our own, have held that the transfer of an inmate from a unit or location where he is subject to the challenged policy, practice, or condition, to a different unit or location where he is no longer subject to the challenged policy, practice, or condition moots his claims for injunctive and declaratory relief, even if a claim for money damages survives." 507 F.3d at 286-87. The Fourth Circuit reasoned as follows:

> Once an inmate is removed from the environment in which he is subjected to the challenged policy or practice, absent a claim for damages, he no longer has a legally cognizable interest in a judicial decision on the merits of his claim. Any declaratory or injunctive relief ordered in the inmate's favor in such situations would have no practical impact on the inmate's rights and would not redress in

> any way the injury he originally asserted. And the newly situated inmate has no further need for such declaratory or injunctive relief, for he is free of the policy or practice that provoked his lawsuit in the first place.

507 F.3d at 287. *See also*, *Rendleman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there"); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987) ("[b]ecause the prisoner has been transferred, his request for injunctive relief is moot"); *Taylor v. Rogers*, 781 F.2d 1047, 1048, n.1 (4th Cir. 1986).

Based on the Plaintiff's own representations in his Amended Complaint and as demonstrated by his grievance filed and answered at Ridgeland Correctional Institution, the issue that undergirds his request for preliminary injunctive relief arose at Ridgeland. It would thus appear that the Plaintiff's concerns are now moot after his transfer from that facility.

In addition to ripeness and mootness, the Plaintiff has also not demonstrated that he has standing at this juncture to seek preliminary or permanent injunctive relief. "Article III of the United States Constitution limits federal courts to resolving actual cases and controversies." *Burke v. City of Charleston*, 139 F.3d 401, 404 (4th Cir. 1998). "A justiciable case or controversy requires a plaintiff who has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Planned Parenthood of South Carolina, Inc. v. Rose*, 361 F.3d 786, 789 (4th Cir. 2004). Therefore, "to establish standing, a plaintiff must show (1) an actual or threatened injury (2) that was caused by the putatively illegal conduct of the defendant and (3) that is likely to be redressed by a favorable decision." *Id.*, *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

As indicated above, the Plaintiff has certainly not identified a single occasion where he took a transport ride while at Wateree and was not permitted to wear a kufi. In fact, the record shows the *exact opposite* to be true. The Plaintiff supports his current motion with an affidavit of Keyon

Bowman, a fellow inmate at Wateree, who attests that "Darryl Louis recently went on a transportation ride on April 10, 2025 wearing his kufi." *See*, Bowman Aff., ¶ 12. (ECF #25-3, p.2). While the Plaintiff does not address any specific events at Wateree, he does concede in his affidavit that "[t]here was a few times I was permitted to wear my kufi w/o any conflict." *See*, Louis Aff., ¶ 13. (ECF #25-2, p. 2). Thus, the evidence fails to show that the Plaintiff has presented this Court with a justiciable claim for which he even has standing at this point.

In sum, in order to succeed on his current motion seeking a preliminary injunction, the Plaintiff must be able to show that he is likely to succeed on the merits. The Plaintiff has not made that showing. To recap, the Plaintiff's evidence from Inmate Bowman demonstrates that he has not been denied wearing a kufi during transport rides while at Wateree. Moreover, the Plaintiff has not shown that the SCDC Religion Policy explicitly prohibits the wearing of a kufi outside the institution. Section 15 of the Al-Islam (Muslim) section of the Handbook allows the wearing of a kufi within an institution but does not address – either allowing or prohibiting – the practice on transport rides or outside an institution. Finally, the Plaintiff has certainly not shown that he has complied with the dictates of Section 4.7 and sought an amendment to the Section 15 of the Al-Islam (Muslim) section of the Handbook to address that issue internally and without bringing that issue prematurely before this Federal Court.

In short, the Plaintiff is seeking a mandatory preliminary injunction, and such review is so extraordinary and disfavored, that the Court should deny the relief sought under the present circumstances where the Plaintiff has simply not shown that he is presenting this Court with a justiciable claim – one that is ripe for adjudication and is not moot given the Plaintiff's current housing at Wateree Correctional Institution and for which he even has standing.

## CONCLUSION

Based on the foregoing legal analysis and discussion, the Defendant respectfully requests that the Court deny the Plaintiff's Motion for Preliminary Injunction and Temporary Restraining Order.

Respectfully submitted,

LINDEMANN LAW FIRM, P.A.

BY: *s/ Andrew F. Lindemann*

ANDREW F. LINDEMANN #5070
5 Calendar Court, Suite 202
Post Office Box 6923
Columbia, South Carolina 29260
(803) 881-8920
Email: andrew@ldlawsc.com

*Counsel for Defendant Joel Anderson*

July 14, 2025