**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**AIKEN DIVISION**

| | | |
|---|---|---|
| Darryl Keith Louis, Jr., | ) | |
| | ) | Civil Action No. 1:25-2958-BHH-SVH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS OR** |
| Joel Anderson, | ) | **ALTERNATIVELY FOR SUMMARY** |
| | ) | **JUDGMENT** |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

In his Amended Complaint, the Plaintiff Darryl Keith Louis, Jr. alleges that the Defendant Joel Anderson, who is the Interim Director of the South Carolina Department of Corrections ("SCDC"), has adopted a "religious policy prohibiting the Plaintiff from wearing a kufi at all times including while transportation rides" and that "places a substantial burden upon the Plaintiff's religious exercise in violation of RLUIPA [Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, *et seq*.]" *See*, Amended Complaint, ¶ IV.D. (ECF #17, p. 4). The Plaintiff seeks a "prohibitive injunction enjoining defendant and any/all SCDC staff from enforcing the religious policy upon me that prohibits me from wearing a kufi on transportation rides." *See*, Amended Complaint, ¶ IV.D. (ECF #17, p. 6).

The Defendant Anderson, who is sued in his official capacity only, seeks dismissal under Rule 12(b)(1), FRCP, or alternatively summary judgment under Rule 56, FRCP, on two primary

1

grounds:    First, the Plaintiff has not presented evidence that the Defendant has adopted a "religious policy prohibiting the Plaintiff from wearing a kufi at all times including while transportation rides," and accordingly, the Plaintiff has not demonstrated that the Defendant may be properly sued in his official capacity under the *Ex parte Young* stripping doctrine.  Second, the Plaintiff has not demonstrated that he is pursuing a claim that is ripe for adjudication and hence justiciable.   The Defendant seeks the dismissal of the Amended Complaint without prejudice.

## LEGAL ANALYSIS

### I.      *Ex parte Young* Stripping Doctrine

The Plaintiff has sued the Defendant Joel Anderson, as the Interim SCDC Director, in his official capacity only.  The Defendant is not sued in his individual capacity.  (ECF # 17, p. 2).  In his official capacity, the Defendant Anderson is not a "person" amenable to suit under 42 U.S.C. § 1983.  In *Will v. Michigan State Police*, 491 U.S. 58 (1989), the United States Supreme Court held that the state is not a "person" amenable to suit under 42 U.S.C. § 1983.  "Official capacity suits ... genuinely represent only another way of pleading an action against an entity of which the officer is an agent."  *Kentucky v. Graham*, 473 U.S. 159 (1985).  Accordingly, in his official capacity, the Defendant is a state official and is generally not subject to suit under § 1983.

Nonetheless, the *Ex parte Young* stripping doctrine, upon a proper showing, is an exception to the foregoing rule.  The Plaintiff, however, has not and cannot make a proper showing that the *Ex parte Young* stripping doctrine is applicable to allow an award of prospective injunctive relief against the Defendant Anderson.

As the Fourth Circuit has explained, "[u]nder *Ex parte Young*, private citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law. This exception to Eleventh Amendment immunity is designed to preserve the constitutional structure established by the Supremacy Clause and rests on the notion, often referred to as 'a fiction,' that a state officer who acts unconstitutionally is 'stripped of his official or representative character and thus subjected in his person to the consequences of his individual conduct." *Allen v. Cooper*, 895 F.3d 337, 354 (4th Cir. 2018). "To invoke the exception, the plaintiff must identify and seek prospective equitable relief from an ongoing violation of federal law." *Id*. Moreover, to fall within the *Ex parte Young* exception to Eleventh Amendment immunity, a state official must have a "special relation" to the challenged action which is "a measure of *proximity to and responsibility for* the challenged state action." *South Carolina Wildlife Federation v. Limehouse*, 549 F.3d 324, 333 (4th Cir. 2008). (Emphasis in original).

While the Plaintiff has baldly alleged that the Defendant Anderson adopted a "religious policy prohibiting the Plaintiff from wearing a kufi at all times including while transportation rides," he has presented no evidence to support that allegation. In fact, the Plaintiff has not identified any written SCDC policy even implemented by the Defendant Anderson to that effect. As the Defendant has explained throughout this litigation, the wearing of a kufi by Muslim inmates is addressed in Section 15 of the "Al-Islam (Muslim) section of Handbook which is part of SCDC Policy PS-12.05 titled "Inmate Religion." Section 15 states, in pertinent part, as follows: "Muslim inmates may wear a white kufi head covering throughout the facility, indoors and outdoors." Section 15 does not, however, explicitly address whether a kufi may be worn outside of an institution such as during an inmate transport trip. Hence, there is no explicit or

3

even implicit policy that allows or disallows the wearing of a kufi on transport rides, and certainly, there is no evidence of such a policy being adopted or implemented by the Defendant Anderson.  Hence, the Plaintiff has not shown that the Defendant Anderson, who is the sole named Defendant, has any responsibility for the challenged state action.

In the absence of such evidence, the Plaintiff, who bears the burden of proving the applicability of *Ex parte Young* stripping doctrine, has failed to satisfy that burden of proof.  *See*, *Allen v. Cooper*, 895 F.3d 337, 355 (4th Cir. 2018) (burden of proving the applicability of *Ex parte Young* stripping doctrine is on the plaintiff).  Accordingly, the Plaintiff has not demonstrated that the Defendant may be properly sued in his official capacity under the *Ex parte Young* stripping doctrine.

## II.     Plaintiff's RLUIPA Claim is Not Ripe for Adjudication

As a corollary to that first ground for dismissal, the Defendant Anderson further submits that the Plaintiff has not presented a RLUIPA claim that is justiciable and ripe for adjudication by this Court, and on that additional basis, this action should be dismissed without prejudice.

To reiterate, the wearing of a kufi by Muslim inmates is addressed in Section 15 of the "Al-Islam (Muslim) section of Handbook which is part of SCDC Policy PS-12.05 titled "Inmate Religion."  Section 15 states, in pertinent part, as follows:  "Muslim inmates may wear a white kufi head covering throughout the facility, indoors and outdoors."  Section 15 does not, however, explicitly address whether a kufi may be worn outside of an institution such as during transport. While the Plaintiff is seeking a permanent prohibitive injunction against what he calls an unconstitutional "religious policy," he never identifies the policy adopted or implemented by the Defendant Anderson that he seeks to be enjoined.  This is evident because Section 15 is the only

4

"kufi policy," and it does not even address whether a kufi may or may not be worn outside the institution. In short, there is no policy prohibition to enjoin because the current and existing policy is silent on the issue, and as the Plaintiff's own evidence shows, there is no consensus on the issue among the institutions where he has recently been housed.

Importantly, where new issues arise, SCDC Policy PS-12.05 does provide for a procedure for an inmate to request revisions to the religious practices as addressed in the Handbook. Section 4.7 states:

> Recognized faith groups that request a revision of either the beliefs and/or practices as listed in the Handbook will submit the proposed change/request to the Chaplain at his/her institution with a complete description of the requested revision and supporting information from official written documents. The request will be reviewed by the Chaplain and forwarded to the Chief, Pastoral Care Services along with the recommendation of the institutional Chaplain. The request will be considered at the time of the policy's annual review.

Thus, as a prerequisite for seeking the injunctive relief sought in this litigation, the Plaintiff must initially demonstrate that he has fully complied with SCDC policy that governs that process. The Plaintiff, however, has not pled nor presented proof that he has complied with that process. In other words, there is no evidence that the Plaintiff has made a request for an amendment to Section 15 of the "Al-Islam (Muslim) section of Handbook by way of full compliance with the requirements of Section 4.7. As a result, the Plaintiff's request for permanent injunctive relief as sought in this litigation is not ripe for adjudication, and hence, the Plaintiff has not demonstrated the existence of a justiciable claim.

On this issue, the case of *Taylor v. Byars*, 2012 WL 2149756 (D.S.C. 2012), as adopted in 2012 WL 2149761, is instructive. This Court's decision was later affirmed by the Fourth Circuit, which adopted this Court's reasoning. *See*, *Taylor v. Byars*, 490 Fed. Appx. 603 (4th

5

Cir. 2012). In that case, an SCDC inmate alleged that he was a practitioner of the religion Shetaut Neter and "that Defendants have violated his rights by denying his request to have the religion recognized as an official faith in the SCDC." 2012 WL 2149756, *1. While dismissing the case for failure to exhaust administrative remedies under the PLRA, this Court further recognized that the inmate "makes no allegation that he had initiated the process to seek official recognition of the religion, that the process outlined in SCDC Policy PS-10.05 was not complied with, or that Shetaut Neter has been denied official recognition by the acts of any SCDC officials." 2012 WL 2149756, *3. If effect, this Court agreed that the plaintiff's claim was also not ripe for adjudication.

In the present case, the Plaintiff has submitted a Step 1 and Step 2 grievance with his original Complaint, but that is not sufficient to demonstrate compliance with the process set forth in Section 4.7. The grievances may show exhaustion under the Prison Litigation Reform Act (PLRA), which is a non-jurisdictional prerequisite for filing a federal action. But, it is critical to recognize that PLRA exhaustion, which is not jurisdictional in nature, does not automatically make a claim ripe for adjudication and justiciable as a matter of law. *See*, *Perttu v. Richards*, 605 U.S. 460, 469 (2025) ("PLRA exhaustion is not jurisdictional"). Importantly, the Defendant is not arguing that the Plaintiff failed to exhaust under the dictates of the PLRA but rather that the Plaintiff has not presented a claim that is ripe for adjudication in the first place. It is a ripeness defense, not an exhaustion defense, that the Defendant has asserted and is continuing to assert. They are separate and distinct defenses that serve differing purposes.

Indeed, federal courts have recognized, as the Defendant has argued, that "[t]he doctrine of exhaustion is separate from the doctrine of ripeness." *Richardson v. Hamilton*, 2018 WL 107727, *3, n. 5 (D. Me. 2018). The Third Circuit has explained that "the doctrines

of ripeness for adjudication and of exhaustion of administrative remedies are distinct and not interchangeable. While exhaustion is sometimes a jurisdictional prerequisite to a civil suit in a district court, ripeness is a product of the concept of justiciability. Ripeness concerns whether the legal issue at the time presented in court is sufficiently concrete for decision." *United States v. Lightcap*, 567 F.2d 1226, 1232 (3d Cir. 1977). (Citations omitted).

In particular, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). The United States Supreme Court has further explained that, with respect to administrative decisions, the ripeness doctrine seeks "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-149 (1967)*, overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977). Similarly, "[a] case is fit for judicial decision if the issues are purely legal and the agency action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Charter Federal Savings Bank v. Office of Thrift Supervision*, 976 F.2d 203, 208 (4th Cir. 1992).

As the Defendant has previously shown, in response to the Step 1 Grievance, Warden Levern Cohen of Ridgeland Correctional Institution correctly advised the Plaintiff that "[i]t has not been approved for inmates to wear a kufi outside the institution." (ECF #1-1, p. 4). The Plaintiff, however, has not shown that he has taken the appropriate steps, as allowed by Section 4.7, to seek a change in the kufi policy to extend the practice of wearing a kufi, which is

permitted within the institutions, to also be allowed outside of the institutions while on transport rides.

Without question, the Plaintiff has the burden of proving that his claim is ripe for adjudication. *See*, *Jamison v. Kenneth M. Levine & Associates*, 2022 WL 17472023, *1 (D.S.C. 2022) ("[t]he burden of proving ripeness falls on the party bringing suit"). In previous filings, the Plaintiff argued that Section 4.7 "does not apply to him" because he is not seeking a change in policy but rather seeks an "exception as applied to him." That seems to be nothing but semantics. In effect, the Plaintiff is seeking for SCDC to change its policy to address whether a Muslim inmate may wear a kufi outside of any institution just as he is permitted by policy to wear the kufi inside the institution. Section 4.7 is designed specifically to address an inmate's request for a "revision of either the beliefs and/or practices as listed in the Handbook." Until such a request is made and a decision rendered under Section 4.7, the claim is simply not ripe or justiciable. To reiterate, the fact that the Plaintiff may have complied with PLRA exhaustion does not change that conclusion because ripeness and exhaustion, as the courts have recognized, are separate, distinct, and not interchangeable.

In addition to the Plaintiff's current RLUIPA claim not being ripe given his failure to demonstrate compliance with Paragraph 4.7, the Plaintiff's own allegations do not demonstrate that he has been denied the opportunity to wear a kufi while on transport rides and certainly not at his current institution, Trenton Correctional Institution. The Plaintiff has not amended his Amended Complaint to allege or identify a single occasion where he attempted to wear a kufi during transport and was denied or even disciplined while an inmate at Trenton Correctional Institution. He has likewise not alleged what the current practice is for transport rides at Trenton Correctional Institution. Yet, of note, when he was at Wateree Correctional Institution, the

8

Plaintiff filed an affidavit of Keyon Bowman, a fellow inmate at Wateree, who attested that "Darryl Louis recently went on a transportation ride on April 10, 2025 wearing his kufi." *See*, Bowman Aff., ¶ 12. (ECF #25-3, p. 2). The Plaintiff himself also filed an affidavit where he conceded that "[t]here was a few times I was permitted to wear my kufi w/o any conflict." *See*, Louis Aff., ¶ 13. (ECF #25-2, p. 2).

Thus, such evidence fails to show that the Defendant Anderson has adopted or implemented an unconstitutional "kufi policy." At best, it shows that some times the Plaintiff is permitted to wear a kufi on transport rides and some times he is not allowed to do so. That does not demonstrate an unconstitutional policy has been adopted or implemented or one that needs to be enjoined. In effect, by the sworn testimony he has submitted to this Court, the Plaintiff has shown he has not presented this Court with a justiciable claim at this point to enjoin an unconstitutional policy.

In sum, the Plaintiff's evidence from Inmate Bowman demonstrates that he has not been denied wearing a kufi during transport rides while at Wateree. His own testimony further shows that he has been allowed at times to wear a kufi on transport rides. Moreover, the Plaintiff has not shown that the SCDC Religion Policy explicitly prohibits the wearing of a kufi outside the institution. Section 15 of the Al-Islam (Muslim) section of the Handbook allows the wearing of a kufi within an institution but does not address – either allowing or prohibiting – the practice on transport rides or outside an institution. Finally, the Plaintiff has certainly not shown that he has complied with the dictates of Section 4.7 and sought an amendment to the Section 15 of the Al-Islam (Muslim) section of the Handbook to address that issue internally and without bringing that issue prematurely before this Federal Court. For all of these reasons, the Plaintiff's request for a prohibitive permanent injunction is not ripe for adjudication, and on that additional basis, his RLUIPA claim against the Defendant Anderson should be dismissed.

## CONCLUSION

Based on the foregoing discussion and analysis, the Defendant Joel Anderson respectfully request that the Court dismiss the Amended Complaint without prejudice.

Respectfully submitted,

LINDEMANN LAW FIRM, P.A.

BY:    *s/ Andrew F. Lindemann*
  ANDREW F. LINDEMANN  #5070
  5 Calendar Court, Suite 202
  Post Office Box 6923
  Columbia, South Carolina 29260
  (803) 881-8920
  Email: andrew@ldlawsc.com

*Counsel for Defendant Joel Anderson*

November 10, 2025